Good morning, Your Honors. May it please the Court, my name is Bill Wick from Wachter & Wick, representing appellant the Sherwin-Williams Company. I've arranged to reserve five minutes of my time for rebuttal. This is a case about whether a settlement agreement approved by and an order issued by the District Court in 2001 can be rewritten nine years later. In 1999, Emeryville sued Sherwin-Williams under CERCLA, Comprehensive Environmental Response Compensation and Liability Act, also known as the Superfund statute. Parties settled in 2001. Under the settlement agreement, Sherwin-Williams paid Emeryville $6.5 million, assumed continuing obligations for groundwater cleanup payments, and in return received a release from all claims arising from or relating to the former facility on Site A in Emeryville, including claims arising from contaminants emanating from the site, whether presently known or unknown, suspected or unsuspected. Contribution protection against the same claims was provided, and the agreement was explicit that the contribution protection was a deal-breaker. If not provided in the order, the parties could terminate the agreement. In short, Sherwin-Williams paid $6.5 million with continuing obligations to settle once and for all its liability with respect to contaminants emanating from that site. Neither Emeryville nor Sherwin-Williams knew about any contamination on the adjacent Site B at the time the Site A order was entered. Both parties have verified pleadings, so stating. The order barring contribution claims became effective when it was signed on February 15, 2001. It remains in effect today, and the Court retained jurisdiction to enforce it. Fast forward to 2006. Emeryville filed a state court action against a number of parties alleged to be liable for contaminating the adjacent Site B in Emeryville. After Emeryville and some defendants alleged that Sherwin-Williams was liable at Site B because of contaminants emanating from Site A, Sherwin-Williams went back to district court, filing a motion to enforce the 2001 settlement agreement and order. Judge Ossoff enforced the release provision, ruling that Emeryville must dismiss all of its claims against Sherwin-Williams arising from or relating to Site A with prejudice. But the judge did not enforce the contribution bar, and he did not enforce the settlement agreement provision mandating the award of attorney's fees on the release issue. The district court's failure to enforce the agreement and order is reversible error for one simple reason. The judge does not have the discretion to ignore or rewrite the 2001 agreement and order in the absence of a successful motion under Federal Rules Civil Procedure 60 showing fraud or misconduct or the like. Now, how do you deal with the lack of notice problem here that Adams and the other intervener? I think that's what they call them, intervener. Is that right? Yes. They, you know, say they didn't have any notice. How can they be cut off without any notice? How do you deal with that? You deal with that because you realize you're in the world of CERCLA or the Superfund statute, and CERCLA does not require notice. The CERCLA statute is designed, as you know, to foster the cleanup of these contaminated sites. And in order to do that, Congress included a number of provisions that casual observers or serious observers might consider very unfair. But the idea was to promote early settlements, and if you give a settlement to a party resolving their liability once and for all and contribution protection, the fact that it's unfair to other parties has been held not to be relevant. But what about the Section 122i notice? The 122i notice is notice that is traditionally provided by the United States when it's a plaintiff in a CERCLA case. But as this Court has ruled, Section 122 doesn't apply to the States, and CERCLA allows the States to bring enforcement actions under CERCLA as well. So when a State brings a CERCLA action, they are not required to provide notice. Same thing with private parties. Private parties are authorized to bring enforcement actions under CERCLA, and they are not required to provide notice. So there is no requirement of notice under the statute itself. Let's go back to Judge Thompson's question about the interveners. Under 113f1, those parties couldn't have brought a contribution claim at that time because they weren't sued. So, I mean, it's like this Catch-22, right? So why doesn't that de facto preserve that claim or this Site B claims? That doesn't preserve that claim because they had been sued, they didn't have any – their only right to contribution is a statutory right provided under CERCLA. And that right doesn't accrue until they've been sued. So the fact is that until they were sued in 2006, that contribution right to the extent that it's in the statute never materialized. And the, you know, the CERCLA scheme is such that – Well, but you argued that 113 in effect bars their contribution claim, right? Yes. But how could it bar something that they couldn't have brought? Do you see what I'm saying? Yeah. That's my kind of intellectual puzzle I'm having with the way you made your argument. Right. Because Congress decided that parties in Superfund cases wouldn't settle unless they could settle for once and for all. And that's why they provided contribution protection in 113. And contribution protection can include known and unknown claims. Nobody knew about the interveners' claims in 2001. The interveners didn't know about them. Sherwin-Williams didn't know about them and Emeryville didn't know about them. But that doesn't preclude the parties in a contaminated site case from providing contribution protection against future known and unknown claims. Otherwise, you'd never get a settlement that once and for all resolved the case, because there always could be potential parties out there who could later come and drag a party back in. And Congress decided that in order to facilitate speedy settlements, if parties settled early, even if they paid less than what somebody later decided, with the benefit of hindsight, was their fair share, those parties were entitled to fully and finally resolve their case at a site, regardless of what happens nine years later. So our point is there was no basis, there was no Federal Rule 60 action, there was no basis for upsetting the order, and that the judge didn't have the discretion to go back and rewrite the order. But if you do go back and reassess, our position is that the judge's action was wrong for two reasons. First, CERCLA authorizes broad releases and contribution protections to promote settlement, which is the discussion we just had. And secondly, neither CERCLA nor State law authorized the interveners to make an end run around the contribution bar because of this failure of notice. Emeryville, when it brought its good faith settlement in district court in 2001, quoted the Ninth Circuit as saying that CERCLA's primary goal is to encourage settlement. Now, I don't think that's the case. I don't think there's any dispute about that. We agree with that. Congress understood that parties could only settle if they could settle once and for all, and that's why they provided the contribution protection language in 113. I worked for EPA for 13 years and worked on many CERCLA enforcement actions and settlements, and defendants always wanted the broadest possible contribution protection at releases, and the parties that didn't settle always complained about it and always said, oh, that's unfair. But the courts, as you see from the cases cited in the brief, have consistently upheld the 113 contribution bar and the settlement process that occurs in CERCLA. Now, there was an issue here at the district court when he reassessed the order. He said, well, one of the reasons I don't think the contribution protection ought to apply is because Emeryville is not a State under Section 113. But if you go back and look at the order itself and the settlement agreement, the authority cited was not 113F2, it was 113F. And, of course, 113F includes subsection 1 and subsection 2. Now, at the time the order was entered, Emeryville certainly suggested that it was a State, and it cited favorably the city of New York case and said, well, the district court there applied 113F2, where the settling plaintiff was a municipal entity, because to do so would facilitate settlement and serve the statutory objectives. Emeryville said it was the government, ought to be treated like the government, and the contribution protection ought to be applied. So I would say Emeryville ought to be a stop from arguing that it isn't a State now. And it was acting under the Polanco Act, as the briefs indicate, which authorizes redevelopment agencies to exercise State cleanup authority with State oversight. But our point to Judge Alsup and our point here is that 113F1 authorizes contribution protection, even if you retroactively decide that Emeryville wasn't a, quote, State, unquote. And we cited the Mallinckrodt case, the Barton-Solvins cases, the cases cited at footnote 20 of page 31 of our brief, and most recently an eastern district case from a couple of years ago, the Ameripride case, private party settlement where no State or Federal government was involved. And the district court judge barred all claims in the contribution protection provision, regardless of when asserted or by whom, and whether Federal or State. As I also said, there's no Federal common law right to contribution, and as the First Circuit ruled, no deprivation of any constitutionally protected interest. CERCLA provides for the statutory contribution, but a party's contribution claim cannot accrue until that party's sued. We talked about that. And we cited the United States v. Maryland sand and gravel case, making that same point in this case. And even the district court here admitted that the interveners, even if they had been PRPs at Site A, would not have had a right to participate in the settlement. So even if they had had notice, there's no right under CERCLA to participate in the settlement. Another fact to remember here is that the interveners are landowners at Site B. And CERCLA makes landowning a strict liability crimes, obviously a civil statute, but basically it's a status liability. If you're the current owner of the property, you are a potentially responsible party, and you are therefore liable under the statute. So the interveners are not innocent parties. They are potentially responsible parties under the State Polanco Act, which incorporates the verbatim, the liability scheme of CERCLA. And the courts have consistently ruled that potentially responsible parties like interveners can be barred from pursuing claims when contribution protection has been granted, and that there is no – there are no due process rights to participate in settlements in which the contribution parties are negotiated. The courts have held that interveners' contribution claims should not be elevated to the status of a protectable interest and often deny motions by nonsettlers to intervene to object. CERCLA 113, as I said, does not require notice to interveners. We cited the city of Waukegan case from 2009 where the courts said, and I quote, nothing about the limitation of contribution rights created by the CERCLA statute implicates due process. The United States, as we indicated, as a matter of practice, follows 122, but there's no right to legally challenge the United States. There's no opportunity to challenge if the United States doesn't do that. And I said there's no requirement for a State or a city to follow 122 either. Now, we also indicated that – or the courts have made clear that the CERCLA contribution bar necessarily preempts State claims, because, of course, it wouldn't work if you could settle all your claims with the Federal Government and then somebody could come around and sue you in State court under some other theory. And as the cases cited in our brief indicated, the courts have also consistently held that CERCLA preempts those State claims if there's a contribution protection bar, and so the State statutes are not really at issue. However, if you independently assess the State statutes, there are no requirements in the California State statutes for notice to nonparties. And as we said here before, nobody knew that the interveners in 2001 would be parties to the lawsuit at Site B in 2006. I also wanted to give a minute to the attorneys' fees argument. When we brought our motion to enforce with Judge Alsop, we had two prongs. One was a contract prong saying that our contract with Emeryville providing the release should be enforced, and the second was the contribution protection prong that we've been talking about, not involving Emeryville, but involving the interveners and the contribution protection order. Our argument was that we prevailed on the one contract claim with Emeryville. And California law, and we cite the case Hugh v. Ibarra, says that the trial court has no discretion to deny fees to the successful litigant when the decision on the litigated contract claim is not mixed. Even if you lose part of your case that's not contract-based, but you win your contract claim, then if your settlement agreement says you shall be entitled to fees for interpreting that contract, you're entitled to the fees. So we believe that there's no discretion for the district court to deny those attorneys' fees and that that decision ought to be reversed. In short, Sherwin-Williams paid $6.5 million to fully resolve its liability for any contaminants emanating from Site A. The deal was explicitly contingent on obtaining broad contribution protection in the court's order. The order was validly issued under CERCLA and it remains valid today. CERCLA's primary goal of the settlement can be achieved only if defendants can settle and buy their peace once and for all for contaminants emanating from a site. We ask you to reverse the district court and enforce the 2001 order as written and enforce the settlement agreement attorney's fees provision as written. I'll reserve the balance of my time. Thank you. Roberts. Yes, Your Honor. May it please the Court. I'm Robert Doty. I'm here on behalf of the City and the Redevelopment Agency. I'm going to address the fee issue at the start. We think that's a fairly simple issue and we appreciate the comments of the Court about the CERCLA issues. I'm going to address the Federal statutory interpretation issues. We believe State law is very important here. Mr. Hewitt on behalf of the Robinson Party is going to address that. If you have issues about the intervention and the propriety of intervention, Mr. Speier was going to address those. Mr. Doty, let me just inquire here. The City is entitled to recover against Sherwin-Williams for any contaminants, if I can call them that, from any property other than Site A. Isn't that right? We believe that is correct and we don't believe that Sherwin-Williams disputes that. Okay. Then you should be able also to recover from Adam and Robinson any other contamination to Site B because they are owners of Site B. Is that right? That is correct also, Your Honor. And then what they would do, if they could succeed on their contribution claim, is get that money back from Sherwin-Williams. Some or all of it, yes. Which relates to Site B. Yes. Their costs, their damages are exclusively about Site B. And they would seek to recover some or all of that from Sherwin-Williams. So how is the City left injured in this? What are you arguing for here? We are arguing the fee issue because that's directed at us. Yes. Okay. We agreed to take on the statutory construction issue in part because I personally have the background of the state, excuse me, the prior federal court actions. That's why I was a little confused. I am the one human being here today. So basically you're here as Mr. Cerquois. I would defer that one. In addition, of course. But I am the person who has the continuity to go back and talk to you about what Judge Alsop did in 2000. So does that answer your question? Yes. On the fee issue, we think this is actually pretty straightforward, pretty cut and dried. Both the Ninth Circuit case and the Hugh v. Ibarra case direct the trial court to look at the totality of what the claimant was after and compare the result they got. And if it's a mixed bag, then the court has discretion to deny the fees. At the 10,000-foot level, Sherwin-Williams wanted a complete we are out of the Site B litigation in toto result. And the other thing they asked for was complete payment for all of their fees in that Site B litigation from Embryville. They got neither of those. It's still in the Site B litigation for contamination that didn't emanate from Site A. So it still has to defend at least part of Embryville's claim. And it's also still in as against the intervenors, we believe. But on both levels, it did not achieve its we want out objective. Furthermore, it did not got, did not get the effective indemnification from its defense costs in the underlying litigation, the Site B litigation in State court. So it didn't get that relief. Given that mixed bag and the fact that Sherwin-Williams may have accomplished nothing economically, it could still be liable to Embryville and still be liable to them, we believe the trial court had discretion. He exercised that discretion, and no abuse of that discretion has been shown. We think Sherwin's reliance on the Sue v. Abar case is simply wrong. If you read that case, it's a frustrated buyer of a single-family residence suing the seller of the single-family residence. The buyer had one argument in court. These exchanges of correspondence created a contract. We get specific performance of that contract. That was the only issue. The court looked at the exchange of offer and counteroffer and the dates on things and said, no, a contract was never formed, so you can't have specific performance. That's the sort of clear, unequivocal, no-issue-about-mixed-result outcome where a court loses its discretion. That's clearly not what happened here. And that's really all I was going to say about the fee issue. With regard to CERCLA Section 113f1, which in this Court seems to have been the primary focus of Sherwin's efforts, we do not believe this is a case where the judge was rewriting a 2001 settlement agreement and related order. We believe this is a case where the judge conscientiously interpreted that order and applied it to facts he did not know about in 2000, and we believe he had the discretion to do that. We think what happened in this case is the court focused exactly on the catch-22 situation that Your Honors focused on. And he said, okay, that seems unfair. That seems inconsistent with this command in 113f1 that I do equitable allocation of cleanup costs. He then looked at Sherwin-Williams and said, did you guys make any efforts to put on notice those people to whom your contamination might be emanating to? And Sherwin-Williams had to say, no, we didn't. And it's not some mystery that the neighbor might be the place it's emanating to. Sherwin has been sued by others of its neighbors in Emeryville at its 1450 Sherwin Avenue plan. So the notion that you would go to those who are the emanatees, if you will, is not a very hard notion. Further, we think the Ameripride case from Judge Carlton in the Eastern District gives you the road map of what should have happened. In that case, there was a lot of concern about impact on non-parties. The judge and the parties came up with a mechanism for notifying those people, and then the judge specifically carved out certain things and said those claims will not be within the contribution bar under Federal law, they will not be within the contribution bar under State law. If Sherwin had gone to Judge Alsup in 2000 and spun out this theory that emanating meant we get out of Emeryville in toto, the judge could have said, okay, wait a second, who else might be implicated? Let's make effort through notice in the case that existed for the site cleanup documents. Steps could have been taken to ensure that the Catch-22 didn't happen. Now, Mr. Wick says, well, these people aren't entitled to notice under CERCLA. They just don't get it. We disagree with that strongly, Your Honor. We think in 113F1, the command that he relies on is to do equity, and obviously it's subject to the constitutional limitations that we all live under. We think in these circumstances, the Court had discretion to say, I don't think I did the right equity the first go-round because I wasn't given critical information, so I can go back and I can do equity and make sure that these people are not burdened by the Catch-22. That in some ways really flies against the whole principles in CERCLA, which is you're going to wrap it up and be done. I mean, if you look at the cases, and that was sort of the theory, that at least everybody knows what the box is, what the shape of it is, and how much it costs, sign off, done with that site. So why — this seems like, in your view, it would forever be open to reopening on an equitable basis. No, I don't think that's quite as far as I'm trying to go, Your Honor. What I'm trying to say is it's a fact-bound, case-by-case process under both Federal and State law. And if there's a concern about people who are the M&ATs, as there has come to be in this case, the Court could provide for constructive notice through a newspaper. It could look to the State administrating agency and say, do you have a mailing list for this site, which they did. Let's send a letter to everybody on the mailing list. There would be ways that the Court could satisfy itself that reasonable efforts at notice had been taken. They're going to be imperfect, but they're reasonable. And then it could decide that equity had been served. And keep in mind that — I think the notice, just trying to fit it in the constructive statute, I believe he said that there was no notice requirement, and that we had asked about 122i, is it, the lie? Yes. And the notice requirement there, which according to Mr. Wicks, isn't applicable here. And I'd appreciate your take on that claim. Well, keep in mind that with respect to private parties, the statute actually doesn't ever say you can do contribution protection at all. In fact, 113f1 says nothing we're doing here diminishes people's state law rights. So we think that 113 just is not nearly as far reaching as they would suggest that it is to you. And whatever you're doing under 113 has to be done with the mandates of doing equity. Because keep in mind, the other key purpose of CERCLA is to make sure that cleanup costs are equitably allocated among the people who caused the contamination. That's not going to happen here if Sherwin Williams prevails as relates to Site D. The other thing I would say, Your Honor, is that State law, and Mr. Hewitt's going to address this, provides for — has a similar notice concept. Under the good faith settlement provision. Exactly. And our argument is that there's not preemption here, and you shouldn't preempt State law for two reasons. Okay. So before you get to the preemption, are you now moving off of your statutory notice suggestion? I think I'm fairly well done with that, yes. But is there — maybe I'm still confused about your position. Do you think that in this case there was some statutory obligation under CERCLA for notice under 122? We don't think that by its terms applies to private parties seeking contribution because CERCLA doesn't provide for private parties seeking contribution. The courts have inferred that in a piece of the statute. So in other words, there's no — Mr. Wicks is correct then when he says there's certainly no statutory obligation. We think that the statute doesn't say that. We think the command to do equity, which is the same sentence that he says allows district courts to cut people off, carries with — if it carries the power to cut people off, it carries the obligation to do it in an equitable fashion, and that includes trying to see if there's anybody who needs to be noticed, and that's what Judge Carlson did in the Ameripride case. So we think those — it all is in that one sentence that grants the power to wipe people out is that you make some effort not to put those people on a catch-22. In terms of the preemption discussion, we don't think you should be looking to 113 to cut off what are purely State law claims in this case. These gentlemen are not asserting any Federal law claims at all. 113 created a Federal right, and then it expressly says we're not diminishing State rights. We think that's the first piece of the analysis. The second piece of the analysis is there's no need to take 113 and preempt, and Judge Carlson certainly doesn't rely on preemption, and the reason is because there's no conflict here. California law, through 877 and 877.6, provides essentially a parallel mechanism to preempting to CERCLA that allows for any related State law claims to be brought before a court, to be considered as to whether they can be cut off. So there's no conflict between the two. They work in perfect harmony. And if you look at Judge Carlson's opinion, that's exactly what he believes. They exist side by side because Congress repeatedly in CERCLA said we're not wiping out State law, and they don't conflict with each other, so you don't need to preempt State law with 113. And we think the cases that have gotten to preemption make two mistakes. The first is there is not a single one of them that deals with the fourth sentence in 113.f.1, which is where Congress said we are not diminishing State law contribution rights. The second thing is they don't deal with the question of whether there really is or isn't a conflict. And in California law, there simply is no conflict. You can bring an 877 motion with your 113 motion or your 113.f.2 motion, and you can deal with everything that needs to be dealt with. There's not a conflict between those two bodies of law. I'm going to reserve the rest of our time, unless you have more questions for me, for Mr. Hewitt principally to address the notice argument. I'm sensing you don't have questions about the intervention. And if we don't need to address the intervention. I don't think that the intervention needs further argument. I think the briefing is good on that. I don't mean to cut you off, Bill, but thank you, Your Honors. Good morning. May it please the Court, I'm Henry Hewitt, and I'm representing the intervener, Howard Robinson. And I, this morning, would like to address two issues. One is the 877.6 and 877, the California Code of Civil Procedure, and its role in this case. And the second issue is the constitutional due process questions raised by this case. Because in our view, CERCLA does not preempt the intervener's state law indemnity claim. And as Mr. Doty correctly pointed out, there is no CERCLA contribution claim at issue in this case. There is only our state law contribution claim. Given that premise, the issue remains whether the claims are barred under Code of Civil Procedure 877 and 877.6, which bar contribution or indemnity claims by non-settling joint tort feasors against the settling joint tort feasor where the Court determines the settlement was made in good faith. In this case, the sections do not apply to bar Robinson or Adams' contribution claim with regard to Site B against Sherman Williams. First, we believe that the issue has, in fact, been waived by Sherman Williams, although the notice issue under 877.6 was raised before Judge Alsop. Sherman Williams did not argue that no notice was required. And not having argued it in the district court, we think it cannot be raised here. However, assuming that it can be raised, California law is absolutely clear that notice to the joint tort feasor that is sought to be barred must be given. That's in the Singer case and in the Gatzetter case. And that requirement of notice is bottomed on due process concerns. It is not, according to those courts, it does not matter that the statute itself, 877.6a, only requires notice to the parties in the court. You cannot bar non-parties under 877.6 absent notice. In the end, Sherman Williams appears to concede that notice is required. But in their view, that requirement applies only to unnamed joint tort feasors whose potential liability is known or should have been known. And Sherman Williams, somewhat amazingly in our view, claims that the owners of the Site B parcel, which are immediately adjacent to Site A, were somehow should not have been known to Sherman Williams. That is not a premise that the record supports. They have relied upon the provision in the 2001 settlement agreement that they are protected from claims resulting from the emanation of contaminants from Site A. If they're going to rely on an emanation theory, then they knew that it had to emanate someplace, and Site B is the most logical spot immediately adjacent to where Sherman Williams had its plant. Yes. Let me just ask you. We have this very odd thing where you have your State court case over in Alameda County. Is that right? Yes, Your Honor. Then we have Sherman Williams comes to Federal court to get a declaration about the scope of the contribution. If the issue you're raising now could raise a factual issue, for example, as to know or should have known, correct? I believe, in fact, that is a possible factual issue. However, even if you accept the premise that Sherman Williams did not know or should have known about the Site B parcel owners, that does not mean that some type of notice does not have to be given, namely constructive notice, to bar the claims of unknown potential joint tort feasors. So the idea that, of course, a statute could only require a notice to be given to persons who are known or should have been known, actual notice, but I don't think that the statute contemplates that persons unknown are thus barred, even though they don't even receive constructive notice. Okay. So let's just go back on that and divide it up. Okay. Sherman Williams, of course, is trying to get a declaration here in Federal court through the district court that the settlement it signed puts it home free from the claims of your client and others. If there is on the know or actually, you know, actually known or should have known, if there's a factual issue on that, is that an issue decided in Federal court or does that get decided in State court? I believe that that would be decided in the Federal court in the context of Judge Alsop interpreting the settlement agreement, which states that the contribution protection is defined by what is provided both by Section 113F and by 877 and 877.6. So I think that that decision would be within the scope of the Federal court to determine. Okay. So then let's say that there's a, just for talking purposes, that there's a factual issue on that. Your second point then is, well, even if that were decided against your clients, that there's still a requirement of some kind of constructive notice. And would you elaborate on how that comes out of the California statute and also in this case, what would that have been? With respect to how it comes out of the statute, I think that under Singer and the cases stemming from Singer, the idea that 877.6 must be read in the context of due process principles is what would lead to a conclusion that the statute would not bar a joint tortfeasor who did not have at least constructive notice. With respect to how that would be accomplished, I don't stand here as an expert in CERCLA notice, but I think Mr. Doty in his earlier responses talked about various ways in which notice could be given. And here, to make it not so complicated, we're talking about the adjacent parcel, and so common sense would say that you would give notice to the owners of those parcels, at least those owners that surround Site A, and their names and identities are certainly easily obtained. But even if you were going to do it by constructive notice, I think that the normal methods of publication in various ways would satisfy a constructive notice requirement. But I don't think in this case the Court needs to reach whether constructive notice would be satisfactory, because I think the known or should have been known standard is met just based upon the settlement language itself, the emanating language in the settlement agreement. Turning briefly to the question of due process, a question that is obviously reached only if the Court determines that Section 113F and Sections 877 and 877.6 bar the State contribution claims. And if that is the case, then the issue is whether the principles of due process, including barring the contribution claims of non-PRPs who are not parties to the action, had no notice of the action, and had no opportunity to be heard, are violated. First, I would, and this wasn't carefully briefed, I don't think. Under California law, the right to contribution or partial indemnity is a property interest. That's made clear in Singer where the Court says since a non-settling tortfeasor loses his right to seek contribution or partial indemnity from a joint tortfeasor who settled, if the settlement is adjudged to be in good faith, the non-settling tortfeasor stands to be deprived of his property right to contribution or partial indemnity. So we have an interest that is subject to due process protection. I think it's also important in the context of this case in determining whether the interveners have a protected interest to understand the relationship between the site fee cost recovery action that the agency has brought and the agency's dominant domain action against both Robinson and Adam. What is at issue here is if Robinson, using Robinson as an example, had very little to do with the contamination of Site B in his parcel, and I don't think that's disputed. There's some cost, but very minimal. Consequently, however, if he is denied contribution rights against Sherman Williams, where there's allegations that their contamination is the primary problem at Site B, which emanated from Site A, then he runs the risk, Robinson does, of having his just compensation for eminent domain being completely eaten up by his need to satisfy the total award for the cleanup costs at Site B. So we have a piece of property that's worth $5 million. We have cleanup costs in excess of $5 million. So absent a contribution claim against Sherman Williams, there's that risk that Mr. Robinson will essentially give his property to Emeryville, even though he bears little or no responsibility for the contamination. To avoid that, we believe, is an interest that is subject to due process protection. Thank you. Okay, thank you. All right, Mr. Wicks. Mr. Spire, it's not that we didn't want to hear from you, but we do have your 28J letter, and I think that issue is, as we said, fully briefed. So thank you. I wanted to first address the fee issue, since Mr. Doty did that. All Sherman Williams wants is for the order as written in 2001 to be enforced. At the time we brought the motion to enforce, the only claims that Emeryville asserted were in A to B theory. After we won that release argument before Judge Alsop, Emeryville has since asserted claims that another Sherman Williams facility caused the contamination at Site B. And as Mr. Doty acknowledged, everybody's in agreement. We don't contend that that order bars Emeryville from making those claims that it came from someplace other than Site A. They're welcome to make those arguments. So our goal to get out of the case was based on the factual situation at the time, which was the only allegations in the case at the time were that the contamination came from A to B. Now there are other allegations. So we concede we won't get out of the case, but we're entitled to have the order enforced to preclude any of the parties from pursuing claims for which Sherman Williams was released or received contribution protection in 2001. Well, with respect to prevailing party issue, I mean, is your argument then that you won your little part? Exactly. Well, but what is your authority for the situation that, you know, obviously you kicked off the lawsuit. Yes. But as often happens in these lawsuits, once you kick it off, you don't really get to kind of control what it turns into. True. So under your theory, we would have kind of miniature prevailing parties as we went along. And so I'm trying to understand what's the best authority for that as to why you're the prevailing party for fee purposes. All right. Well, I respectfully disagree that this suggests that there would be many prevailing parties. We made two claims in our motion to enforce. One was the settlement agreement and order released all claims. Emeryville released all of its claims against Sherman Williams arising from or relating to Site A. And we wanted the judge to issue that order. And that's what we got. We got exactly what we wanted. Emeryville initially appealed it. They abandoned their appeal. That's a final order. We're not here to talk about that because we are happy with it. So I don't think there's any dispute. We got everything we want on that issue. And we, in our view, that's the contract issue. We had a contract with Emeryville where they agreed to provide the release. And I won't go into it in detail here in the oral argument, but we think Mr. Doty has the Hsu v. Ibarra case wrong. We think it makes real clear under California law, at page 35 of our brief, when the results of the litigation on the contract claims are not mixed, that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other, good news for Sherwin-Williams, bad news for Emeryville. The only two parties on the contract. On the contract claim, on the release, exactly. The courts of appeal have recognized that a trial court has no discretion to deny attorneys' fees to the successful litigant. So I invite you to review that case. We think the attorneys' fee issue is clear. Now, Mr. Doty suggested that, well, in his discretion, Judge Alsop can essentially change the 2000 order because he has equity as a Federal district judge to do it. And we just disagree with that. We think that unless there's a Rule 60 motion for fraud or misrepresentation, he doesn't have the authority to revisit that order. But then, to get to the substance of it, assuming you disagree with me, assuming that he can rewrite the order, there's a lot of talk here about notice. And the suggestion, both before Judge Alsop and the suggestion here, is that somehow that was Sherwin-Williams' job. And I've been involved with CERCLA for 30 years, since its inception. I've never seen a case where a private party has given notice. The notice responsibilities, to the extent they exist, and as we pointed out, it's not mandatory, but it's always the government, the plaintiff, that gives the notice. The notice in the Federal Register, of course, under CERCLA, that the EPA and Department of Justice typically choose to give, although they're not required to do so, can't be. Sherwin-Williams couldn't have put a notice in the Federal Register. That's only for the Federal Government to provide notice. So the idea that somehow it shifted, that the defendant should provide notice, in our view, is completely skewed and is inconsistent with 30 years of settled CERCLA case law. There's no obligation on Sherwin-Williams' part to provide notice. In fact, our view is to the contrary, as you might suspect, that it was the plaintiff's government's duty. Emeryville was the government. They were suggesting that they were a State at the time they entered the order. They negotiated and agreed to the broad scope of the release and the broad scope of the contribution protection. And it's our view that if there's any failure to give notice here, that failure is Emeryville's. And that's the reason Mr. Doty cited, for example, the Ameripride case, which we're happy to we cite it as well, and we think you should take a look at it. That's where Judge Carlton, I believe it was, in the Eastern District in 2007, ruled that the his order was that under both the CERCLA and under 877.6 of the California Code of Civil Procedure, contribution claims are barred regardless of when such claims are asserted or by whom. They're barred. Such claims are barred regardless of whether they're brought pursuant to CERCLA or pursuant to any other Federal or State statute or common law. And I'll get to that point later about preemption. But this ---- We want to go right away to State law because you only have three minutes left. All right. Well, before I get to the State law, let me indicate that we have a strong disagreement about preemption. And we cite the cases at pages 43 to 46. And I know you don't always agree with your sister circuits. But the Third Circuit recognized when Congress expressly created a statutory right of contribution in CERCLA, it made that remedy a part of an elaborate settlement scheme aimed at the efficient resolution of environmental disputes, permitting independent common law remedies would create a path around the statutory settlement scheme, raising an obstacle to the intent of Congress. State law claims preempted. Second Circuit, CERCLA preempts the State law remedies of restitution and indemnification. And it only makes sense. It can easily be seen that instituting common law restitution actions in State court would bypass the carefully crafted settlement scheme in which potentially responsible parties who choose to settle gain protection from contribution. So we think it's ---- if you look at the settled CERCLA case law, it is absolutely clear we don't have to reach the California statutes. Any sort of State claims would be preempted because the scheme wouldn't work. If you got the Federal CERCLA contribution protection and somebody could go next door to the State court and make the same claim in State court, the whole thing would be a nullity. And that's why the courts have said that CERCLA preempts efforts to circumvent contribution through the State law claims. But the ---- as you will see in our brief, if the State statute were to independently apply, the State statute talks about notice to parties, all parties and to the court. And the cases that are cited rely on Singer, which says, Fundamental constitutional principles of due process compel us to conclude that an unnamed joint tortfeasor whose potential liability is known or reasonably should be known to the settling parties, but who is given no opportunity. And here, of course, as you ---- as Your Honor pointed out, it's a factual question. It's obviously a question that the Federal court should deal with because the Federal court should make the ruling that the State claims are preempted in any event. But the fact is that California law independently doesn't require clairvoyance. It doesn't require parties to try to identify who a party might be 9 years later making a claim under the contribution protection provision. The ---- as I said, both Emeryville and Sherwin-Williams have verified discovery responses here that neither party knew about contamination at Site B, much less who the owners were at Site B, and there was no opportunity to give notice. And if notice should have been given, it should have been the plaintiff, the government, the City of Emeryville, to give that notice. And that's why you can look to Ameripride as well, because in that case, what the Ameripride did was that when the UCFA should apply, and that eliminates to the extent you have any concern about notice to the interveners, if the Uniform Comparative Fault Act principles are applied, it's Emeryville which failed to give notice that would bear the brunt of that. Emeryville made the decision to settle. Emeryville made the decision to accept and negotiate the release and contribution protection provisions. And under Judge Carlton's view, it's Emeryville that should bear that burden. And to the extent that the interveners have any due process arguments, those are mooted by the application of that UCFA. Thank you. I have one last question, if you would. This is going back to under Section 9613F1, which 113, actually, is the way we refer to it. At the very end of that provision, it says, nothing in the subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under Section 9606, et cetera. What does that mean? What that means is it preserves, in the absence of a contribution protection order, assuming that didn't exist, it preserves State law claims for contribution. The fact that there is a Federal statute providing for contribution doesn't prohibit State law claims for contribution, which are the claims. You know, if we hadn't had this settlement in 2001 and the interveners here were bringing State law claims for contribution, Sherwin-Williams couldn't come in and say, oh, you know, those are prohibited because you can only make those in Federal court under CERCLA. It's simply a catch-all provision that says we're not eliminating those claims. But the cases under CERCLA are clear that once you have contribution protection, obviously, that prohibits parties from pursuing those claims, the contribution protection will be enforced and it's not a conflict with the last sentence of Section 113. Thank you. I want to thank all counsel for argument. CERCLA is a statute that Federal courts have deemed to be quite complicated in every single opinion they write on it. So we appreciate your arguments and your briefing. The City of Emeryville v. Sherwin-Williams is submitted.
judges: Hall, Thompson, McKeown